THE ALPENA LUMBER COMPANY v. GEORGE N. FLETCHER ET AL.

[ORIGINAL BILL.]

GEORGE N. FLETCHER v. THE ALPENA LUMBER COMPANY, ET AL.

[CROSS-BILL.]

JESSE P. BISHOP AND JOHN G. BEEKMAN, ASSIGNEES v. GEORGE N. FLETCHER ET AL.

[SUPPLEMENTAL BILL.]

*Arbitration—Estoppel by representations and admissions—Land contract— Statute of frauds.*

Where an arbitration fails and litigation is begun, the decree therein cannot properly be based upon an award of the arbitrators, made out of time and not relied upon by either party.

Arbitration *commended* as a proper mode of settling a complicated dispute involving inconsistent and diverse claims by both parties against one another.

Where one of two joint-owners of undivided shares in land, offers, for himself and his co-owner, to sell their interests, and represents them as estimated to cover a specified acreage, and his offer is not accepted, but an offer made by his co-owner is, his statement as to quantity will not conclusively bind him in a subsequent litigation begun by the purchaser for the partition of the lands, any more than if it had been casually made in oral conversation; and he will not be estopped from denying that his co-owner had the quantity stated, especially if the estimate given by the latter was lower. The purchaser cannot take advantage of the first offer while expressly denying that he claims anything under it.

One cannot repudiate a contract and have the benefit of it at the same time; nor can he base an estoppel on the contract as against the other party any more than he can rely upon the promise while withholding the consideration for it.

Statements made in a paper proposed as a contract may have weight if intelligently and deliberately made as admissions of fact, even though the proposition is not accepted, but another contract is made; but if they are made by way of concession and compromise they may be entitled to no weight whatever.

A land contract which, though written, does not describe a part of the lands nor point out any method for identifying them, is fatally defective under the Statute of Frauds. So *held* where a joint owner of land purported, in selling it, to be acting for himself and his co-owners, but the quantity of land fell short of his representations and a compromise agreement was made which provided that the deficiency might be made up out of lands owned solely by the vendor, but there was nothing relied upon by either party to show what particular parcels could be taken.

Where the owner of an undivided share in certain lands professes as agent of his co-owners, to sell their shares together with his own, and in doing so makes certain representations as to the quantity, in reliance upon which the purchasers pay him, he ought not afterward to be allowed to repudiate the representations; and if the quantity of land falls short, the purchaser is entitled to an accounting for moneys received beyond what was required to pay for the quantity actually sold.

Appeal from Alpena. Submitted April 4-5. Decided June 21.

BILL to establish rights in lands and for partition. Complainants in the supplemental bill appeal. Reversed.

*J. D. Holmes, W. S. Tennant* and *L. Prentiss* for complainants.

*Kelley & Clayberg* and *Hanchett & Stark* for defendant Fletcher.

Cooley, J. The purpose of the original bill was to establish the right of complainant to certain undivided interests in pine lands, in which defendant Fletcher also had interests, and to have partition made. The complainant having subsequently made an assignment for the benefit of its creditors, a supplemental bill was filed by the assignees having in view the same general object.

The history of the controversy, as disclosed by the pleadings and accompanying exhibits, is substantially as follows:

In the summer of 1872, George Prentiss, then resident in Detroit, entered into negotiations with George N. Fletcher of the same city for the purchase of certain pine lands. owned by Fletcher in common with James Campbell, of Boston. The negotiations resulted in obtaining from Fletcher an optional contract, bearing date August 1, 1872, of which the following is a copy:

"It is agreed by and between Geo. N. Fletcher of the first part, and George Prentiss of the second part, whereby the party of the first part agrees to sell unto the party of the second part all the pine lands owned by him in town 32 north, range 3 and 4 east, in the State of Michigan, at eleven dollars per acre, it being the undivided half of some eight thousand acres, and also the other undivided half owned by James Campbell, of Boston, Mass., for nine dollars per acre, or for such sum as said Campbell and said Prentiss shall agree upon, and it is at the option of said Prentiss to take all or none, or only Campbell's half, and if he takes only Campbell's half, then the said party of the first part agrees to hold in common and to sell his interest as may be desired, by stumpage or otherwise, to said Prentiss or others, as shall seem best to both parties; the said Prentiss to have three months to decide if he takes said lands or not, and in consideration of the above the said Prentiss gives his note for $6500, sixty days, in part payment of said Campbell's half, and the balance to be paid within six months from date; and if he does not take said lands then said Fletcher is to give said Prentiss a contract to lumber on said lands the coming winter at $2.00 for Norway and $3.00 for white pine, payable first of June next; the

$6500, with interest from time of payment to June 1st, 1873, to be in payment for said stumpage. If the said Prentiss takes the said Fletcher's half, time to be given for payment, with interest at 7 per cent., and in case any unforeseen accident shall hinder the parties from getting off the coming winter sufficient stumpage to meet said note, then said Fletcher agrees that 'he will pay to said Prentiss the difference on or before the 1st of June, 1873, with interest."

This paper was signed in duplicate. It will appear from its terms that Fletcher assumed to act for Campbell as agent, but that negotiations by Prentiss directly with Campbell were left to his option. Accordingly Prentiss went to Boston and saw Campbell, and without apprising him of the negotiations already had with Fletcher, secured from him a new optional contract for his undivided one-half interest. This is in the form of a letter addressed by Campbell to Prentiss, of the date of August 9, 1872, and is as follows:

"DEAR SIR: In consideration of $1.00 to me in hand paid by you, and $6500, to be paid by you to Geo. N. Fletcher of Detroit, Mich., for me, to apply as the first payment on this purchase, by August 13, 1872, I hereby sell and assign to you my undivided one-half interest in all the pine land owned by me and George N. Fletcher in town 32 north, range 3 and 4 east, in the State of Michigan, being my entire interest in said lands, estimated at some 3000 acres more or less, the price to be seven and seventy-five one-hundredths dollars ($7.75) per acre; payments to be $6500 down—to George N. Fletcher as above—and the balance in one, two and three years from date of your acceptance of this proposition—equal annual payments—with interest at seven per cent., you to have three months from this date to examine said lands and accept or reject this proposition, and in case you reject it, the money advanced by you is to be either taken out in stumpage or the money refunded to you by June 1, 1873, as agreed by you with George N. Fletcher."

The prominent differences between this agreement and that which Fletcher had given, so far as concerns the interest of Campbell, are seen to be that in this the price named is one dollar and twenty-five cents less per acre, and the quantity named is a thousand acres less. In each the quantity is given as an estimate. No written acceptance

was ever made of either of the optional propositions contained in the contract bearing date August 1st, and Prentiss denied that there was ever any oral acceptance, or that he ever made any purchase of either interest under it. On November 5, 1872, Prentiss caused to be delivered to Campbell a note signed by himself in the following terms:

"DEAR SIR: I beg to notify you that I this day accept your offer of August 9, 1872, as to certain pine lands in Michigan, and that I have paid to Geo. N. Fletcher the sum of six thousand five hundred dollars as stipulated in said offer."

Before this acceptance was received, and very soon after the date of the offer it refers to, Campbell, learning of the contract of August 1st, and of its better terms, addressed a letter to Prentiss, who was then in Maine, notifying him that he could not abide by the proposition of August 9th, and desired that it should be returned to him. Prentiss, in response to this, on his return from Maine called upon Campbell, who repeated his request for a return of his proposition, but without avail. Campbell also wrote Fletcher to see Prentiss and have the agreement of August 9th cancelled, and he repeatedly from that time on, to both Prentiss and Fletcher, protested against it as wrong and as having been obtained from him by deception. Prentiss, however, insisted upon it, and the matter remained unsettled until the spring of 1873. Meantime Prentiss had been cutting timber upon the land, and was naturally anxious to perfect his title. Campbell on the other hand was in need of money, and negotiations were opened anew which resulted in Fletcher giving Prentiss another contract in the following terms, dated April 14, 1873:

"In consideration of two thousand dollars this day paid me by George Prentiss to apply on the 2100 odd acres of land purchased by him of James Campbell of Boston, I hereby agree as follows:

"The said Prentiss shall have the six thousand and some odd acres of pine land owned by myself and others, in town 32 north, range 3 and 4 east, State of Michigan, as shown by the minutes and estimates of the same made in 1872 by John Keating and Frank Dyer of Alpena, Mich., for said parties, on the following terms:

"About twenty-one hundred acres, Campbell's lands, at seven and seventy-five hundredths ($7.75) per acre, and about one thousand acres, White's lands, at same prices, both purchases dating from November 4, 1872. The Campbell tract, 2100 acres, to be paid for after deducting the six thousand five hundred dollars paid last fall, as follows: Two thousand cash—paid to-day—note for three months for one thousand dollars, and balance October 15, 1874, with interest at seven per cent.

"The White tract—1000 acres—to be paid for in one, two and three years from date of purchase, with interest at seven per cent.

"The remaining three thousand odd acres—my land—said Prentiss is to have at ten dollars fifty cents per acre, to be paid for in ten years, or as fast as the timber is cut off, with interest at seven per cent. per annum, annually. All of the above to be on land contracts. Each lot is to be conveyed in separate parcels or on separate papers, so the different lots of land may be kept separate, and enable said Prentiss to cut my 3000 last, if he so elects. In case I am unable to get Mr. White to put in his land at less than nine dollars per acre—it being understood that it will go in at either nine or seven $\frac{75}{100}$ dollars per acre—in that event I agree to put in my 3000 acres at ten dollars, instead of ten $\frac{50}{100}$ dollars per acre. In case I am unable to get said Campbell & White to agree to the foregoing, I am at liberty to return the two thousand dollars this day paid me by said Prentiss, within ten days from date, and be released from this agreement.

"The purchase of my three thousand acres to date from November 4, 1872."

Without expressly recognizing this contract the original bill avers that Prentiss, in making his purchase of Campbell, relied entirely on the representations of Fletcher respecting quantities; that Campbell represented the amount owned by him to be about 3000 acres; "that on or about the 14th day of April, 1873, said Fletcher stated to said Prentiss that said Campbell did not in fact own all of the lands so represented by him and said Fletcher as owned by him, said Campbell, but that one William White, then of Boston aforesaid, but since deceased, was in fact at and prior to August 1, 1872, and still was the owner of about 1000 acres thereof in common with said Fletcher and Campbell, and

said Fletcher did then agree with said George Prentiss in consideration of the premises and of $2000 then paid by him to said Fletcher, that he, said George Prentiss, should have said White's lands aforesaid at $7.75 per acre, the purchase thereof to date from November 4, 1872, and that he, said Fletcher, would procure a written contract from said White therefor at that price, or return to said George Prentiss the said sum of $2000, within ten days therefrom, no part of which sum was ever returned, and which sum, together with the note of said George Prentiss to said Fletcher for $1000, bearing date April 14, 1873, and payable three months after date, was by agreement to apply on the said purchase from said Campbell and said White; that said Prentiss had no knowledge of the amount of land owned by said White, or as to his title to the same, and in this relied entirely upon the representations so made by said Fletcher." It then avers that subsequently, on or about May 1, 1873, Fletcher modified his statement as to the amount of the Campbell and White lands, and put the amount at 2882 acres, but without saying how much was owned by Campbell and how much by White; that Prentiss on May 1, 1873, gave to Fletcher as agent for White and Campbell his notes for $8020, besides interest, towards payment on the purchases from them, all of which were afterwards paid, and that he has paid to Fletcher in all for White and Campbell on such purchases $17,520, besides interest.

Fletcher says of this last mentioned contract that it was drawn by Prentiss himself, who was anxious to get from Campbell some recognition of the purchase Prentiss was claiming. However this may be, the bill avoids recognizing it as in any way abridging the rights of Prentiss, and it is treated as important only as it binds Fletcher. As the question how much land Campbell owned is one of the principal subjects of controversy, it should be stated in this connection that Campbell testifies that he told Prentiss when he gave him the option of August 9, 1872, that there was not so much as 3000 acres; but Prentiss nevertheless gave that as the estimated quantity in writing out the offer.

On May 1, 1873, Fletcher executed another paper, supplementary to that of April 14, the provisions of which, so far as they are now material, are as follows:

"It is stipulated and agreed that the amount of land to be sold and conveyed under and by virtue of the contract hereto annexed, dated April 14, 1873, is 5764 acres, being the lands specified in the memorandum hereto attached, examined by Messrs. Keating & Dyer, excepting from said memorandum the undivided half of some 1300 acres therein included, belonging to William Griffin, known as the Oldfield lands. There is also included in said contract, to make up the amount of 5764 acres, [six several parcels described] it being understood that an undivided one-half of the above 5764 acres are to be treated as the White & Campbell lands mentioned in the foregoing contracts, and that the other half are to be treated as the lands of said George N. Fletcher." "Said Fletcher also agrees to give to said Prentiss, in consideration of the foregoing agreements, the refusal for two years to take all of his, said Fletcher's, right to the lake front easterly of his, said Prentiss', boom in Alpena, for $1000, or take that and the river front for the sum of $2500, and if taken, contracts to date from May 1, 1874."

It was further provided by this paper that Keating & Dyer were to examine and report upon the lands put in to make the quantity 5764 acres, and they proceeded to do so and made a report in writing. Fletcher testifies that Prentiss repeatedly acknowledged the purchase of his lands, but Prentiss denies this, and says he never agreed to buy them. This being in dispute Fletcher, in the spring of 1876, filed his bill against Prentiss to compel the latter specifically to perform the alleged contracts of purchase. Prentiss answered, denying expressly that he ever elected or agreed to purchase the interest of Fletcher in the said lands or any part thereof; and Fletcher thereupon discontinued his suit, replevined a large quantity of logs cut upon the lands, and commenced lumbering upon them himself. The Alpena Lumber Company, which meantime had succeeded to the rights of Prentiss, then filed their bill against Fletcher and procured an injunction restraining him from proceeding with the replevin suit. This litigation led to the parties entering into a compromise contract, which bears date

September 13, 1876. Previous to making it the Alpena Lumber Company had contracted with Francis M. Brown, the heir at law of White, and with the administrator upon his estate, for the purchase of his undivided interest at $7.75 per acre, and also with William Griffin of Troy, N. Y., for the purchase of his undivided interest in land " supposed to be six hundred and forty acres, but the actual quantity to be ascertained," owned by himself and Fletcher in township 32 north, ranges 3 and 4 east. Previous to making it also Campbell had conveyed his interests to Fletcher; as he says " to enable him to carry out his contract with Prentiss."

In the compromise agreement Loren Prentiss and Perry Prentiss appear as trustees for the lumber company, but no question in regard to their trust is made, and it is not necessary to explain it. The agreement is signed by them, by the lumber company and by Fletcher, and is as follows :

"Memorandum of agreement made this thirteenth day of September, 1876, by and between George N. Fletcher, of Detroit, Michigan, of the first part, and Loren Prentiss and Perry Prentiss, as trustees, and the Alpena Lumber Company, parties of the second part, witnesseth :

That whereas the said Fletcher is the sole owner of certain pine land situated in township thirty-two (32) north, of ranges three (3) and four (4) east, in the State of Michigan, and is also the owner in common with James Campbell and William White and William Griffin, of certain other lands in said towns and ranges.

And, whereas, the said Loren and Perry Prentiss, as such trustees, are the owners of the rights of said Campbell, White and Griffin in and to all the Campbell, White and Griffin lands, so called.

And, whereas, the said second parties and George Prentiss have caused to be cut from off a portion of such lands as owned solely by said Fletcher, and also from off a portion of the other lands above named the pine timber therefrom.

A partition of such lands so held in common is desired by the parties, and it is therefore agreed that a partition of such lands be made by three disinterested persons, one to be chosen by said first party and one by said second parties, and the two so chosen to elect the third.

That in making such partition, the quantity and quality of the timber and the location of the land is relatively considered.

That the lands so cut upon and over by George Prentiss or said second parties or any persons for them, be set off to the trustees at their value estimated, with the timber heretofore standing, and as if the same were now thereon, as a part of their share of such lands.

That said Fletcher convey to said trustees all of the lands so owned by him solely which have been cut over or upon by George Prentiss or said second parties.

That in exchange for the same, the said trustees are to convey to him, said Fletcher, out of the lands which may be set off to them as aforesaid, lands of equal value, quality, quantity and location considered, to those of said Fletcher so cut over as aforesaid, estimated with the timber standing thereon, and as if the same had not been cut over. The persons so appointed to make said partition to determine and designate such lands, also such partition and division to be made at once, and the parties are to release and convey to each other the lands set off to each respectively.

The said Alpena Lumber Company also agrees to purchase of said Fletcher what is known and called the "lake front," being in the front of and adjoining the mill property of said company, and also in front of Water street, extended in the city of Alpena, and pay him therefor the sum of one thousand dollars in cash, and said company also agrees to pay said Fletcher in cash the sum of six hundred dollars in full settlement of certain harbor dues, claimed to be due to the "Alpena Harbor Improvement Company," from said lumber company.

Said Lumber Company and its successors or assigns in the ownership of the mill property are also to have a right of way over what is called "Water street" extended in said city to said "lake front," and are to keep that portion of said so-called street which may be used by it, in good, sanitary and clean condition.

Said Fletcher is to execute and deliver to said Lumber Company the necessary conveyance of said lake front upon the payment of said one thousand dollars, reserving, however, the right to treat with the United States Government for any river front for dock or light-house purposes, with such depth from the river front as it may require, and to receive all compensation made therefor.

All suits commenced by either of said parties against the other, and the suit of said Fletcher against George Prentiss, are to be discontinued, and any money or property taken in the replevin suits now in the hands or possession of said

Fletcher, which belongs to said second parties, to be returned or applied first to the payment of said sum of sixteen hundred dollars for said lake front and harbor dues, and, secondly, upon whatever may be due said Fletcher upon the mill property mortgage, and the balance to be returned to said Lumber Company.

A certain drain, extending from the "Fletcher House" across the property of said Lumber Company is owned and is to be kept up by the parties in common.

Said Fletcher is to transfer and assign to said Lumber Company and does hereby transfer any and all claims which he may have against George Prentiss or other parties for any of the timber cut as aforesaid and hereby releases the said Company from any and all such claims, in consideration of such partition and division made."

The arbitrators were selected to carry this agreement into effect, and the parties stipulated that they should be empowered " to determine and fix the value of the saw logs belonging to said company taken by said Fletcher in his replevin suit ;" their decision to be binding and final. It was also stipulated that " the estimate of timber and quality of same on these lands, made by Dyer & Keating in 1873, shall be the basis upon which such partition and exchange of land shall be made as far as it goes." Also that the logs taken by Fletcher in his replevin suit were supposed to be 29,235 feet of Norway, and 268,720 feet of white pine. On October 4, 1876, the Lumber Company filed with the arbitrators a paper in which they made claim to the undivided half of all the Griffin lands, of which they gave a schedule ; to the whole of the lands said to stand in the name of James Campbell, of which they also gave a schedule embracing 819 acres, and enough from those standing in the name of Fletcher, White and Campbell to make the quantity 2432.19 acres. Also whatever interest James Campbell had August 1, 1872, in certain other described lands ; "said Fletcher claiming that said James Campbell owned a one-fourth interest in common in the same ; the actual amount of his interest to be ascertained." This claim was not assented to by Fletcher, who insisted that the Lumber Company was only entitled to the actual interest of White and Campbell, which he claimed was an undivided one-half interest in the

Campbell lands, and the Fletcher, White and Campbell lands.

The arbitrators did not proceed to make an award as was contemplated, and although they made a report a long time afterwards, which the circuit judge substantially followed in his decree, it is conceded on both sides that the attempt at an arbitration was abortive. On October 18, 1876, the Alpena Lumber Company filed the original bill in this cause. The bill sets forth the Fletcher optional contract of August 1, 1872; the Campbell optional contract of August 9, 1872; the Prentiss acceptance of the Campbell optional contract; the subsequent Fletcher agreements of April 14, 1873, and May 1, 1873; the contract with White's heir and administrator and the compromise agreement of September 13, 1876: it makes claim under these several agreements and papers to an undivided one-half of all the lands owned by Fletcher alone, or by Campbell, or by Fletcher, White and Campbell, of which it gives separate schedules; it alleges that there are of these, as near as complainant can ascertain, 5022.24 acres, or deducting certain lands standing in the name of Thomas Campbell, 4572.93 acres, of which Campbell and White owned at least 2438 acres, and of how much more complainant cannot tell, and that complainant has become equitable owner of the same; and it prays for an ascertainment of the quantity to which complainant is entitled, and for a partition. To this bill Campbell and the representatives of the White estate were made parties defendant.

Fletcher answered this bill briefly, admitting the several contracts; averring that the optional contract of August 9, 1872, was obtained from Campbell "by some unfair representations;" "that the said George Prentiss and the said complainant and its so-called trustees repudiated so much of said contracts as refers to the purchase of the lands agreed to be sold belonging solely to this defendant, and until within the last six months this defendant supposed and believed the lands owned solely by himself were sold to said George Prentiss also under said contracts;" that "the quantity

of lands proposed to be sold under said contracts was owned by said Campbell, White and this defendant, but the quantity owned by said Campbell and White did not equal and was never represented by this defendant as one-half of the whole of said lands; that as the said complainant repudiates as did' the trustees of said George Prentiss the sale of the lands so owned solely by this defendant, this defendant objects to this court, for the purpose prayed for in said bill, selecting out of this defendant's lands sufficient to make up the supposed quantity claimed to be owned by said Campbell and White." He expresses a willingness to abide by the compromise contract of September 13, 1876, and to have partition made with reference thereto.

Answer was also filed by the representatives of Brown, which it is not important to summarize. Campbell, having conveyed to Fletcher, did not answer.

On November 18, 1879, after a large amount of proofs had been taken, Jesse P. Bishop and John G. Beekman, assignees of the Alpena Lumber Company, filed their original bill in the nature of a bill of review and supplement. The bill alleges that Fletcher, on or about August 1, 1872, represented that James Campbell was owner in common with him of about four thousand acres of pine lands in certain townships of Alpena county, Michigan, being the undivided half of about eight thousand acres; that Fletcher was the agent of Campbell to negotiate for the sale thereof; that these constituted all the lands owned by Fletcher in the townships named; that the optional contracts of August 1, 1872, and August 9, 1872, were given as stated in the original bill, and the latter accepted; that Prentiss had no knowledge of the quantity of the lands, and relied upon the representations of Fletcher; that from representations made by Fletcher April 14, 1873, Prentiss for the first time learned that William White had an interest in the lands of about one thousand acres; that from abstracts procured in February, 1876, and from other information since then obtained, it is claimed that the Campbell and White interest is at least 2400 acres; that on such lands payments have

been made aggregating $17,520, and taxes thereon amounting to $1133.97, which amount should be applied on said contract for said undivided half of said lands; and that complainants are ready and willing to pay the balance. The bill prays that complainants may be decreed to be owners of the lands claimed by complainant in the original bill; and that partition be made. It is charged in this bill that since the filing of the original bill Fletcher has cut and removed from the lands an amount of timber greatly in excess of his share, and that he has also sold stumpage to others, and it prays an accounting in respect thereto. The compromise agreement of September 13, 1876, is not expressly set up, but must be considered embraced in the adoption of the allegations of the original bill.

The answer of Fletcher admits the several contracts; alleges that the optional contract of August 9, 1872, was procured by misrepresentation; declares that neither Campbell nor his assigns repudiated the purchase of Fletcher's sole half until long after the Prentiss-Campbell contract was made; declares that the quantity of lands proposed to be sold by him under his negotiations and contracts was owned by Campbell, White and himself jointly, but that Campbell and White did not own an undivided half, and that he never so represented to Prentiss or to the Lumber Company; "that one-half of all said lands were simply treated and designated as the Campbell and White interest for the sole purpose of fixing and establishing a price for which an undivided one-half of all of said lands were to be sold;" the other half to be treated as his sole lands and sold at a greater price and on different terms; that said Prentiss and the Lumber Company had actual notice from both Fletcher and Campbell that the Campbell and White interest was much less than an undivided half; declares a willingness to abide by the compromise contract; denies that Campbell and White were ever owners to the amount of 2400 acres, and avers that their interest did not exceed 1600 acres; denies sales of stumpage and disregard of complainants' rights in the timber; asserts that certain schedules attached to his answer

contain a true statement of the lands owned by Campbell, White, Fletcher and Griffin, either sole or in common, and of the interests of each; avers a willingness to convey the Campbell lands to the complainant, and declares that a conveyance by the complainants and the Lumber Company to him of all the Campbell and White lands not cut over by them would be inadequate to reimburse him for the lumber cut and removed from his own lands by them, and would leave several thousand dollars due him. A cross-bill had been previously filed by Fletcher, and this with the answer to the original bill is made a part of this answer, but it is not deemed necessary to refer to the cross-bill further.

Upon these pleadings and upon voluminous testimony the case went to a hearing, and a decree was made which was favorable to the interests of Fletcher. This decree in the main is based upon a report or award made by the arbitrators under the compromise agreement of September 13, 1876. This was made out of time, and no one pretends that it had any validity whatever. The decree based upon it is therefore erroneous, and is conceded to be so.

It remains to be seen what relief could have been given under the facts disclosed.

The record, when we consider how few parties were concerned in the successive contracts, presents extraordinary complications, and it is difficult to determine which party is chargeable with most inconsistent and diverse claims. It is greatly to be regretted that the arbitrators chosen to settle the whole controversy did not proceed to do so as was contemplated; for they unquestionably constituted a tribunal more competent to do complete justice, unembarrassed by technical rules and by inconsistent claims, than any court can possibly be. But the arbitration having failed, it becomes necessary to consider the several claims made by complainants, and to determine how far under the peculiar facts they can be recognized and upheld.

I. The optional contract given by Fletcher August 1, 1872, is set up by complainants as constituting a binding

admission operating as an estoppel on his part as to the number of acres of which Campbell was owner of an undivided half; and it is said that as George Prentiss entered upon his subsequent negotiations in reliance upon this admission, Fletcher is not now to be heard to deny that Campbell owned the quantity stated. There would be some force to this if Fletcher's offer had been accepted, but complainants deny that it ever was. The action that was contemplated by the admission was therefore never had. Prentiss elected to deal directly with Campbell, and to decline to purchase from Fletcher, and any admission made by Fletcher in his offer can no more bind him conclusively afterwards than if it had been made casually in oral conversation. Prentiss cannot take advantage of the offer while expressly denying that he claims anything under it. Morever, the written offer of Campbell and its acceptance show unmistakably that Prentiss did not rely upon Fletcher's admission of quantity, for what he purchased of Campbell was not the half of eight thousand acres, but "an interest estimated at some 3000 acres, more or less."

II. Under the optional contract of August 9, 1872, accepted by Prentiss, nothing could be claimed but an undivided half of such lands as Campbell was owner of an interest in, to that extent, in the townships designated. It seems to be conceded now that he did not own the quantity specified—three thousand acres; but there was nothing in the negotiations so far, to obligate Fletcher to supply any deficiency.

III. The contract of April 14, 1873, and the supplementary contract of May 1, 1873, complainants repudiate, so far as they purport to be contracts of sale by Fletcher, though they claim the right to have the benefit of them as estoppels against Fletcher in respect to the quantity of the White and Campbell lands. If these papers purported to be nothing but contracts of sale of Fletcher's interest, the claim set up by complainants would be futile; they cannot repudiate a contract and at the same time have the benefit of it; they can no more set up an estoppel under such circumstances than they can rely upon the promises while withholding the consideration.

But a paper rejected as a contract may nevertheless contain important admissions; and these in respect to disputed facts may be very convincing though in making them the party may have had in view an object which was not accomplished. If they were plainly made as admissions of fact, they may be given such weight as they appear to deserve; and the circumstances attending them will be examined for any light they may throw on the deliberation with which the admissions were made. A statement in an abortive contract may be as convincing of a fact as any other; and there is no reason why it should not be if it was intelligently and deliberately made. If it was made by way of concession and compromise, it may on the other hand be entitled to no weight whatever.

The contracts of April 14 and May 1, 1878, purported to be something more than contracts of sale by Fletcher to Prentiss. They recited the Campbell and White purchases also; they specified the terms of payment, and the last of the two provided that it was "understood that an undivided one-half of the above 5764 acres are to be treated as the White and Campbell lands mentioned in the foregoing contract;" and Fletcher proceeded to accept payment therefor on behalf of these parties. Now there is reason to believe from what appears in the oral proofs that the actual interest of Campbell and White was less than the quantity here expressed; and it is shown that the record title did not exhibit the actual state of the equities. However this may be, if Fletcher, as agent, dealt with this quantity of land as being the land of his principals, with a party who supposed it to be so, and from whom payment was received for it, his repudiation of the representation afterwards ought not to be suffered if the rules of law will permit of his being held to it.

But the compromise agreement may also be important for its admissions. Referring to that agreement we find that it does not purport to change rights; it merely provides a mode whereby they may be defined and apportioned. But that contract expressly declares that Fletcher is sole

owner of some of the lands; and the agreement for partition and adjustment of accounts is made upon the basis of that fact conceded. Whatever, therefore, up to that time, may have been the legal rights and equities of the parties respectively, this must put an end to all claim on the part of complainant Beekman that he is entitled to an undivided half of all the lands, including those standing in the name of Fletcher alone. And as this agreement gives no lists, and points out no method whereby it can be determined what lands are treated as the lands of complainants, we have nothing to guide us but the record title. The amount of land which stood in the name of Campbell is shown to be 819 acres. The Fletcher, White and Campbell lands were $2164\frac{65}{100}$ acres. Of all these complainant is entitled to one-half, equivalent to $1486\frac{82}{100}$ acres. Prentiss paid $17,520, for which Fletcher should account. This, at $7.75 per acre, would pay for 2260.64 acres, and complainant ought to receive this amount of land at least, because for this he has paid to a party acting in the double capacity of owner and agent for other owners. But we do not see how any lands are to be set off to complainant on any facts appearing in this record. There is no written contract whereby complainant has become entitled to receive from Fletcher a conveyance of any particular parcels of his lands to make up the deficiency, and no method agreed upon except in the compromise contract whereby it can be determined what parcels of Fletcher's lands shall be selected out of the whole quantity owned by him as the parcels on which he is to be deemed to have accepted payment. We have then, in effect, a land contract which is so far imperfect that it neither describes a portion of the lands sold, nor points out any method whereby they are to be identified. Such a contract is fatally defective under the statute of frauds.

Neither party asks to have the compromise contract enforced, but both treat it as having failed of its purpose and become ineffectual. Decree in this case will be made on that assumption. Complainant is entitled to have partition to the extent of the $1486\frac{82}{100}$ acres, and to have Fletcher

account for the sum received by him over and above what was required to pay for this quantity of land. Each party is also entitled to an accounting in respect to the timber cut by the parties respectively on the lands jointly owned or owned by the other. For the purposes of these accountings there must be a reference, unless the parties agree upon some method of dispensing with it. Prentiss and the complainant claim to have paid taxes for which Fletcher is justly accountable, and these, so far as they appear to be proper charges against Fletcher, can also be brought into the accounting.

The decree appealed from must be reversed with costs of this court, and the cause remanded. The costs of the circuit court will be left to abide the final result.

The other Justices concurred.