SHAPIRO v. PATRONS' MUTUAL FIRE INSURANCE CO.
OF MICHIGAN.

1. INSURANCE — STIPULATIONS MAKING AWARD OF ARBITRATORS FINAL VALID.

Although the stipulations in a mutual fire insurance policy providing for arbitration of a claim and making the award of the arbitrators final, are valid and binding on the insured, yet, where the insurer, in carrying out the methods stipulated in the contract, acts in bad faith so as to defeat the real purpose of the arbitration, the insured has the right to ignore the proceedings, and without waiting for the award, at once commence an action at law on the policy.

2. SAME — AFTER AWARD INSURED'S RELIEF IS IN A COURT OF EQUITY.

Where insured has submitted his claim to the board of arbitration and an award has been made, he may maintain no action at law, but his relief is in a court of equity to set aside the award.

3. SAME—ARBITRATION—GOOD FAITH REQUIRED.

Where, under the policy, the insurer has the sole power to appoint the arbitrators, the utmost good faith on its part is called for, and strict compliance with the letter and spirit of the contract should be observed.

4. SAME—UNREASONABLE DELAY IN ARBITRATING JUSTIFIES ACTION ON POLICY.

Since the main purpose in providing for arbitration in case of a loss is to provide a simple and inexpensive method for the prompt adjustment and settlement of same, where the arbitrators, who were appointed by the insurer and met at the call of its secretary, delayed for more than six months in passing upon plaintiff's claim, said delay was so unreasonable, unwarranted, and oppressive as to warrant plaintiff bringing an action at law on his policy without waiting for the award of the arbitrators.

Error to Ottawa; Cross (Orien S.), J.   Submitted

June 8, 1922.   (Docket No. 53.)   Decided July 20, 1922.

Assumpsit by Sam Shapiro and others against the Patrons' Mutual Fire Insurance Company of Michigan, Limited, on a policy of insurance.   Judgment for plaintiffs.   Defendant brings error.   Affirmed.

*Kinnane, Black & Leibrand,* for appellant.

*Fred T. Miles* and *Raymond Visscher,* for appellees.

McDONALD, J.   The plaintiff, Sam Shapiro, is a farmer residing in Ottawa county, Michigan.   Dora Shapiro is his wife.   The Federal Land Bank, the Jewish Agricultural & Industrial Aid Society and the Grand River National Farm Loan Association are mortgagees.   The defendant is a domestic farmers' mutual insurance company, incorporated under Act No. 262, Public Acts 1895 (2 Comp. Laws 1915, § 9586 *et seq.*).   The action is on an insurance policy to recover damages for loss to buildings and contents resulting from fire.   The policy was issued on May 10, 1920.   The fire occurred January 10, 1921.   Notice was at once given the company by the insured and an adjusting board was appointed as required by the articles of association.   It made an investigation and adjusted the loss at $3,500.   The company appealed to the arbitration board.   This board met on the 4th day of April, 1921, and adjourned from time to time until the 21st day of July, when it reversed the findings of the adjusting board and disallowed plaintiff's claim *in toto*.   Meanwhile, on the 23d day of May, 1921, while the arbitration proceedings were still pending, the plaintiff brought this action at law on the policy.

The defendant defended on the grounds:

*First.* That the award of the arbitration board was a bar to the action, and

*Second.* That the plaintiff had wilfully caused the burning of the buildings.

The plaintiff had judgment for $4,180. The defendant appeals.

The articles of association, which are made a part of the policy contract, provide that when a member sustains a loss his claim shall first be submitted to an adjusting board, that from the findings of this board either party may appeal to a board of arbitration, that the board of arbitration shall have exclusive jurisdiction of the controversy, that its action shall be final and conclusive, and that no suit at law or in equity shall be begun or maintained to determine the justice of the claim, the validity of the policy, the liability of the company or to fix amounts and valuations.

It has been held that such provisions in an insurance policy contract are valid and binding on the insured, and that he must exhaust the remedies so provided before he can invoke the aid of the courts. *Bone* v. *Insurance Co.,* 215 Mich. 396. And that when he has submitted his claim to the board of arbitration and an award is made he can maintain no action at law, but must obtain his relief in a court of equity which alone has power to set aside the award. *Palmer* v. *Insurance Co.,* 217 Mich. 292.

While it is true that the stipulations as to the method of determining the loss constitute a valid and binding contract between the parties; that before seeking relief from the courts the insured must exhaust the remedies provided in his contract, and that courts of equity alone have power to set aside the award of the arbitrators, it is equally true that if the defendant in carrying out the methods stipulated in the contract acted in bad faith, so as to defeat the real purpose of the arbitration, the plaintiff would have the right to ignore the proceedings, and, with-

out waiting for the award, at once commence an action at law upon the policy.

In *Kersey* v. *Insurance Co.*, 135 Mich. 10, Mr. Justice CARPENTER, speaking for the court, said:

"It is insisted by plaintiff that it may be inferred that defendant was acting in bad faith in the arbitration proceedings; *and it has been held that if either party acted in bad faith, so as to defeat the real object of the arbitration, it absolved the other party from compliance therewith.*"— (Citing *Uhrig* v. *Insurance Co.*, 101 N. Y. 362 [4 N. E. 745]; *Hickerson & Co.* v. *Insurance Co.*, 96 Tenn. 206 [33 S. W. 1041, 32 L. R. A. 172].)

And in *Palmer* v. *Insurance Co.*, *supra*, it is said:

"That such an association may waive arbitration by act or word, in which case the courts are open to the aggrieved member."

"It is the duty of each party to act in good faith to accomplish the appraisement in the way provided by the policy. If either acts in bad faith, so as to defeat the real object of the clause, it usually absolves the other from compliance therewith." 5 Elliott on Contracts, § 4321.

In view of these principles, above stated, the decisive question in the instant case is the good faith of the defendant in carrying out the proceedings stipulated in the contract. In considering this question, it should be first noted that the stipulations referred to were entirely for the benefit of the defendant company. The insured had no part in the selection of the men who were to pass on his claim. The company appointed the adjusting board and elected the arbitrators, who should have exclusive jurisdiction of his claim. The situation called for the utmost good faith on the part of the defendant. It called for a strict compliance with the letter and spirit of the contract. In one respect, at least, it is conceded that this was not done. In appointing the adjusting board,

the provisions of the contract were ignored with the result that two of the members who served were not qualified to act.   The articles of association, which are a part of this contract, provide:

"That the president and secretary shall, within ten days of the date of receiving such notice of loss, select three members to serve as an adjusting board, *one of whom at least shall be from the grange to which the losing member belongs,* one from an adjoining or nearby grange, and the other from the board of directors."

In making these appointments the secretary selected his son, who lives at Lansing, and who was not qualified to act because he was not a member of plaintiff's grange nor of a nearby grange, and was not a director of the company.   Another member, a Mr. Pickett, did not belong to any grange and was not qualified to act.   The third member was a director and his appointment is not questioned.

The secretary was a witness on the trial and, when asked to explain the appointment, said:

"*A.* I thought this, as far as that is concerned, unless there was an objection, if there had been objection we probably would have given another appointment."

In other words, he knowingly violated the express provisions of his contract, willing to get by with it if there was no objection.   It seems to me that this was taking an unfair advantage of the insured, who had come to this country from Russia but ten years before, and who, it is claimed, did not understand his rights under the contract.   Such conduct borders very closely on bad faith.   In this connection, it is insisted by defendant that plaintiff waived all such illegalities and irregularities by appearing without objection before the arbitration board.   Under the circumstances, that is a debatable question which it is not here neces-

sary to determine. These facts are here cited only as evidence of bad faith and as furnishing some justification for the subsequent withdrawal of the plaintiff from the arbitration proceedings.

But the most persuasive evidence of bad faith is found in the unwarranted delay in determining plaintiff's claim before the board of arbitrators. Under the circumstances and by virtue of his contract, he was entitled to prompt action on the part of the board. The main purpose in inserting such stipulations in insurance policies and the chief reason for sustaining their validity, is that they provide a simple and inexpensive method for the prompt adjustment and settlement of claims. A reasonably speedy determination of his rights is just as plainly a part of the contract as though it were written therein in express terms. And it is a very important part of these fire insurance policy contracts for in most cases, as in this, delays work serious detriment to the insured. So a denial of this substantial right is held to release him from further compliance with the contract and to permit him to begin at once his action in the courts.

In 5 Joyce on Insurance (2d Ed.), § 3240, it is said:

"So insured is released from complying with a contract to submit the loss to arbitration as a condition precedent to bringing suit, by any conduct of the insurer's representatives which has the effect of unreasonably delaying or preventing an appraisal from being had or an award being made."

"If one in bad faith prevents or postpones unreasonably the carrying into effect of this stipulated method of adjusting the rights of the parties, * * * he ought not to be heard to plead, in defense of an action to recover upon the contract, that the stipulated mode of adjusting has not been pursued." *Powers Dry Goods Co.* v. *Insurance Co.*, 48 Minn. 380 (51 N. W. 123).

See, also, *Carp* v. *Insurance Co.*, 104 Mo. App. 502 (79 S. W. 757).

In the case under consideration the award of the arbitrators was not made for more than six months after the fire. The record discloses no excuse for the delay. The plaintiff was a poor man. He had a family and had lost his home and all of his belongings in the fire. He appeared before the board at its first meeting and asked for immediate action. As early as March, following the fire, the prosecuting attorney of Ottawa county had written a letter to the secretary in which he said:

"I wish you would take the matter up with the department and if he is entitled to his insurance arrange for payment, as this man seems to be in a very serious position. He has no home, and has waited for his insurance more than two months."

With this knowledge of plaintiff's circumstances the board met on the 4th and 5th of April, and adjourned without making any disposition of the claim, and without making any arrangements for further meetings except subject to the call of the secretary, who did not call another meeting for more than two months. This secretary was the secretary of the company. He was defending against plaintiff's claim. He was disqualified to act on the board of arbitration because he was an officer of the company and the articles of association provided that no such officer should serve in that capacity. To the plaintiff he was an opposite party and yet he was given control of the time when the board should meet to consider the claim. He held up the proceedings for two months, and then only summoned the board to a meeting after the plaintiff had broken away and commenced this suit. This meeting was called for June 8th, and the notice stated that it was for final action on the Shapiro claim. All of the members were not present and an adjournment was taken until June 22d. In the mean-

time, the secretary went to California, and the board seems to have lost all interest in the matter for none of them attended the meeting of June 22d, and no adjournment was taken to any future date. Later the president and the secretary of the company called a meeting for July 21st. At this meeting the claim was denied without giving any, reasons therefor. So far as the record shows this action could have been taken as intelligently at their first meeting on June 4th. In fact, the evidence shows a surprising indifference on the part of the board and the secretary of the company to the plaintiff's right to reasonably prompt action on his claim. We think that the delays were unreasonable, unwarranted and oppressive to the plaintiff. In arriving at this conclusion we have not overlooked the contention of counsel for defendant, who insist that the board had six months to pass on the claim, citing Act No. 256, Pub. Acts 1917, pt. 2, chap. 1, § 8. That section of the statute is inapplicable because it refers solely to life insurance companies, and under that statute life insurance companies are not permitted to make such contracts as we have under consideration in this case.

Under the circumstances the plaintiff was warranted in abandoning the arbitration proceedings and bringing this action, and the circuit judge was not in error in refusing to direct a verdict for the defendant on the ground that the award was a bar to the action. This is not inconsistent with the rules laid down in *Palmer* v. *Insurance Co.; Bone* v. *Insurance Co.*, and other cases relied on by the defendant.

Other questions in the case presented by the assignments of error relate to the admission of evidence and to the court's instruction to the jury. We have examined these assignments and find no reversible error. We think that the verdict was not against the clear weight of the evidence, and that it was not excessive.

The record reveals no material error committed during the conduct of the trial.

The judgment is therefore affirmed, with costs to the plaintiffs.

FELLOWS, C. J., and WIEST, BIRD, SHARPE, and STEERE, JJ., concurred.    CLARK and MOORE, JJ., did not sit.