George W. RILEY and Goldie I. Riley, Plaintiffs-Appellees,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

No. 19332.

United States Court of Appeals Sixth Circuit.

Jan. 28, 1970.

Edward D. Wells, Grand Rapids, Mich., for defendant-appellant; Cholette, Perkins & Buchanan, Grand Rapids, Mich., on the brief.

Robert L. Miles, Big Rapids, Mich., for plaintiffs-appellees.

Before WEICK, CELEBREZZE and McCREE, Circuit Judges.

WEICK, Circuit Judge.

This action was brought in the District Court to recover an amount claimed to be due Rileys under an uninsured automobile clause contained in a liability insurance policy issued by State Farm Mutual Automobile Insurance Company (State Farm) to its insured, George W. Riley. Jurisdiction was based on diversity of citizenship.

The case was tried to a jury, resulting in a verdict and judgment in favor of the Rileys in the amount of $20,000, which was the full amount of coverage provided in the insurance policy for injuries to the insured caused by an uninsured automobile. State Farm has appealed to this Court.

The claim arose from an accident which took place on December 12, 1963. Mr. Riley was driving his automobile, in which his wife, Goldie, was riding as a passenger. The Riley car collided with a truck operated by one Williams, at a street intersection protected by overhead traffic signal lights.

State Farm investigated the accident and determined that it resulted from the negligence of its insured, Riley, in operating his automobile through the intersection when the signal light was red. State Farm then settled a claim for damages asserted by Williams against Riley.

Nearly two years later, namely on November 26, 1965, the Rileys, without the knowledge of State Farm, filed suit against Williams in the Circuit Court of Mecosta County, Michigan, to recover damages for personal injuries alleged to have been sustained by them in said accident. Williams apparently carried no liability insurance on this truck.[1]

On January 17, 1966, the Rileys' attorney wrote a letter to State Farm's local agent in Big Rapids, Michigan, enclosing a copy of the summons and complaint in said Circuit Court action and stated that he intended to take a default judgment against Williams on January 20, 1966 (three days later), if no respon-

---

1. Although the record does not reveal any stipulation to the fact that Williams was uninsured, this fact was apparently not disputed at the trial.

sive pleading was filed. The attorney also claimed that State Farm "must have been under a gross misconception of the accident facts" when it paid its money in settlement of the claims asserted by Williams against Riley.

On January 20, Rileys obtained a default judgment against Williams in the amount of $156,000 in the action in the Circuit Court. On February 4, their attorney again wrote to agent Saum, enclosing a copy of the default judgment. Claim and demand for coverage under the uninsured automobile clause of the policy was made for the first time.

On February 9, State Farm replied to the attorney's letter of January 17, as follows:

"Your letter to Mr. Saum [the local agent] indicating that we fouled up the handling of the claim has been forwarded to me. It has never been our impression that you thought that we paid claims that we didn't owe but rather vice versa. However, we appreciate your concern about our money and have checked into the situation further. We feel that this matter is closed and requires no further action."

On February 22, State Farm replied to the attorney's letter of February 4:

"Your letter of February 4, 1966 making claim under Coverage U of Mr. Riley's policy has been forwarded to me.

"Under the Insuring Agreement III, Exclusion A states in brief that a person entitled to this coverage cannot without written consent of the company, prosecute to judgment any action against any person who may be legally liable to the person.

"Therefore, we are unable to consider any Coverage U payment in this claim."

Rileys' attorney responded to State Farm's letter of February 22 on February 24. He stated that he believed that the exclusion clause was void as against public policy and he requested action on the part of State Farm. State Farm replied on March 2:

"Thank you for your letter citing some cases in your favor. It appears that your position is that the way our policy is written is against public policy and thus unenforceable.

"While I disagree with this I think before we take the matter any further we should have some evidence that there is not any insurance involved in this case. It appears that merely because a default judgment has been obtained that this is not evidence that no insurance is involved.

"Please furnish us with some proof that coverage U is applicable to this case and I will then look further into the matter."

Subsequently, the Rileys' attorney wrote to Williams asking whether he had insurance coverage. No reply was received. Thereafter, on October 17, 1966, the present action was instituted in the District Court.

State Farm filed a motion to dismiss on the ground that the policy provided for an exclusive remedy of arbitration. The insuring agreement provided:

" * * * [F]or the purposes of this coverage, determination as to whether the insured * * * is legally entitled to recover such damages [against the uninsured motorist], and if so the amount thereof, shall be made by agreement between the insured * * * and the company or, if they fail to agree, by arbitration."

The arbitration clause is set forth in the margin.[2]

2. "15. Arbitration. If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount payable hereunder, then each party shall, upon written demand of either, select a competent and disinterested arbitrator. The two arbitrators so named shall select a third arbitrator, or if unable to agree

The District Judge denied the motion to dismiss. His views on the subject of arbitration are best stated in his opinion denying the motion. They are as follows:

> "The [arbitration] clause about which we are speaking today certainly was put in the contract by the insurance company; they are scribners. And they did it after considerable experience and consultation and not for the benefit of the insured but primarily as an impediment to keep the insured from getting into court on the merits of the issues involved.

> "It is intended as another defense to the ultimate obligation of paying, wearing out the insured. It should be strictly construed, and anything that could be construed as a waiver should be accepted as a waiver."

■ These views are only partially correct. It is apparently the law of Michigan that arbitration clauses are "inserted wholly for the protection of the insurer." Bielski v. Wolverine Ins. Co., 379 Mich. 280, 286, 150 N.W.2d 788, 790 (1967), citing 29A Am.Jur., Insurance § 1617. However, in the portion of the District Judge's opinion quoted above is the mistaken assumption which he made explicit in his opinion denying the defendant's motion for a directed verdict. He stated:

> " * * * [I]t is generally accepted, but for statutory provisions, arbitration is contrary to public policy because it ousts the courts of jurisdiction."

Regardless of the law of other states, decisions of the Supreme Court of Michigan have long favored settlement of dis-

putes by arbitration. Alpena Lumber Co. v. Fletcher, 48 Mich. 555, 12 N.W. 849 (1882); Chicago & M.L.S. R.R. Co. v. Hughes, 28 Mich. 186 (1873). Accord, Mich.Stat.Ann. §§ 27A. 5001–5025 [Comp.Laws Mich.1948), §§ 600.5001–600.5025, Pub.Acts 1961, No. 236]. See also Van Horn v. State Farm Mutual Auto. Ins. Co., 391 F.2d 910 (6th Cir. 1968); Norton v. Allstate Ins. Co., 226 F.Supp. 373 (E.D.Mich.1964).

The fact that an arbitration clause is inserted for the benefit of the insurer does not give it a sinister purpose. In these days of congested court calendars, arbitration may be a more expedient method of settlement of claims for both the insurance company and the insured. Additionally, arbitration may be the only truly appropriate method to determine liability of an uninsured motorist to the insured. If suit is filed by the insured against the uninsured motorist, the insurance company, which may be held liable ultimately, is placed in a very difficult position. Having no contractual relationship with the uninsured motorist, it cannot represent him without his consent. We doubt that an insurance company has an absolute right to intervene in an action against an uninsured motorist without his consent. In fact, it is conceivable that such an intervention could work to the prejudice of the uninsured motorist. If the insurance company is unable to intervene, ultimately it may be held liable without having had an opportunity to protect its interest.

■ Nor do we find anything illegal in the following exclusionary provision of the policy:

> "Exclusions — Insuring Agreement III

thereon within 30 days, then upon request of the insured or the company such third arbitrator shall be selected by a judge of a court of record in the county and state in which such arbitration is pending. The arbitrators shall then hear and determine the question or questions so in dispute, and the decision in writing of any two arbitrators shall be binding upon the insured and the company, each

of whom shall pay his or its chosen arbitrator and shall bear equally the expense of the third arbitrator and all other expenses of the arbitration. Unless the parties otherwise agree, the arbitration shall be conducted in the county and state in which the insured resides and in accordance with the usual rules governing procedure and admission of evidence in courts of law."

"Insuring Agreement III does not apply:

(a) to bodily injury to an insured, or care or loss of services recoverable by an insured, with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefore; * * *"

Without such a provision the insured could do exactly what he did here, namely, file suit, obtain a default judgment against a person whom the insurer had no right to defend, and claim the judgment as binding on the insurance company on the ground of res judicata.

■ At the close of plaintiffs' evidence, State Farm moved for a directed verdict, which the Court denied, and the case was submitted to the jury on the single issue of whether State Farm waived the arbitration provision in the insurance policy. In so submitting the case the District Court erred as there was not substantial evidence to prove any waiver. There was no evidence that Rileys ever made a request or demand for arbitration.[3]

The insurer was entitled to have determined by arbitration the issue of the liability of the uninsured motorist to the insured. *Cf.* Rogers v. United Services Automobile Ass'n, 410 F.2d 598 (6th Cir. 1969).

■ The District Court, in submitting to the jury the issue of waiver, relied on Bielski v. Wolverine Ins. Co., *supra*. In our opinion reliance on this case was misplaced. *Bielski* involved a ruling on a motion for summary judgment where "every well-pleaded allegation in the complaint is assumed to be true," 379 Mich. at 283, 150 N.W.2d at 789. The complaint had alleged a demand for payment of the policy benefits on the day of the accident, and when this was refused,

" * * * [P]laintiff did on numerous occasions demand that the matter be submitted to arbitration and defendant continually refused to enter into arbitration or to co-operate with plaintiff so that arbitration could be had."

*Bielski* held that these allegations, if true, required submission to the jury of the issue of waiver of arbitration, and that the trial court erred in granting summary judgment.

Kelley v. Citizens Mut. Ins. Co., Mich. App., 172 N.W.2d 537 (1969), held that the insurer waived arbitration when it admitted in its answers that it had refused to arbitrate and claimed it was not liable under the policy.

In the present case, no claim was made for policy benefits until more than two years after the accident occurred. Rileys

---

3. Accepting as the law of Michigan that arbitration clauses are inserted wholly for the protection of the insurer, it does not follow necessarily that it is the duty only of the insurer to demand arbitration. The insurance contract clearly states that in the event of disagreement between the parties, arbitration shall ensue "upon the written demand of either. * * *" This provision binds both parties equally. Responsibility for demanding arbitration could have been placed solely with either party and such a provision would have been enforceable according to its terms. Blake v. Farmers' Mutual Lightning Protected Fire Ins. Co. of Mich., 194 Mich. 589, 593–594, 161 N.W. 890 (1917) (duty of insurer); Norton v. Allstate Ins. Co., 226 F.Supp.

373, 374 (E.D.Mich.1964) (duty of insured). Even if the contract had placed that duty solely with the insurance company, it seems almost too obvious to comment that in order to bring into play a requirement to demand arbitration, the company must be made aware that there exists a dispute which would be the proper subject of arbitration. State Farm was not notified of a dispute until three days prior to entering the default judgment in the Mecosta County Circuit Court. This was inadequate notice. There was no waiver of "exclusion (a)" of the policy or estoppel to assert the same as a defense. Naparstek v. Citizens Mut. Ins. Co., Mich.App., 172 N.W.2d 205 (1969).

made no request or demand for arbitration at any time. Instead, they filed suit in the Circuit Court against Williams, and, in violation of the provision of the policy, proceeded to take a default judgment against Williams, giving State Farm only three days' notice of their intention to do so.

We disagree with the District Judge that the failure of the company to intervene in the Circuit Court action or to move to set aside the default judgment against Williams, is any evidence of waiver of arbitration. As we have previously pointed out, the company had no right to represent Williams in the Circuit Court and had no right to move to set aside the default judgment against him. We also question its right to intervene on its own behalf.[4]

Rileys came within exclusion (a) of the policy by prosecuting to judgment the claim against Williams without the consent of State Farm.[5] Because of the operation of exclusion (a), State Farm was completely relieved of any liability under coverage U of the policy. Therefore, regardless of the outcome of the action in the Mecosta County Circuit Court, State Farm had no right to intervene since it was not a party in interest.

State Farm did not delay arbitration. No request therefor had been made by plaintiffs; see footnote 3, *supra*. The delay was on the part of plaintiffs, who made no claim for policy benefits under the uninsured automobile clause until more than two years after the accident. In fact, the only action

taken by State Farm prior to its being notified of the action in the Circuit Court, was its settlement with Williams. Settlement alone is not sufficient basis from which to infer a waiver.[6]

The correspondence between the parties, in our judgment, did not constitute a waiver of arbitration. At no time did Rileys make a request for arbitration. Nor did State Farm deny at any time that its policy provided uninsured automobile coverage. Rorick v. State Mut. Rodded Fire Ins. Co., 263 Mich. 899, 248 N.W. 584 (1933), on which the District Court relied, may be distinguished on the ground that in *Rorick* the company denied the existence of a contract between itself and the insured.

We interpret the letters of the company merely as declining to pay policy benefits on the ground that there was no legal liability therefor. In its first letter, which was two years after the accident and after it had made payment of the claim of Williams against Riley, it stated:

"We feel that this matter is closed and requires no further action."

In its second letter, which was written after it had been advised of the default judgment, it called attention to the fact that the insured had violated the policy provisions by proceeding to judgment in the Circuit Court without the written consent of the company and, therefore, it could not consider payment. In its last letter, on March 2, it disagreed with the contention of the Rileys' attorney

---

4. The District Judge relied on Michigan General Court Rules of 1963, Rule 209, Rule 520.4 and Rule 803.2.

5. Three days was not sufficient time within which to react to Rileys' notice that they were prosecuting to judgment.

6. To hold that settlement of a claim against the insured without more could constitute a waiver of arbitration, would be to set at loggerheads two policies of the state of Michigan. As has been noted, Michigan encourages the resolution of disputes by arbitration. At the

same time, the law in Michigan is that a liability insurer has a good faith duty to settle claims against its insured. City of Wakefield v. Globe Indem. Co., 246 Mich. 645, 225 N.W. 643 (1929). *Cf.* Omscolite Corp. v. Federal Ins. Co., 374 Mich. 344, 347, 132 N.W.2d 154 (1965); Jackson v. St. Paul-Mercury Indem. Co., 339 F.2d 40, 44 (6th Cir. 1964). Therefore, unless the insured resists attempts to settle, the insurer is duty bound to settle a claim which its investigation shows is meritorious.

that the policy provision was illegal, and stated:

"* * * [W]e should have some evidence that there is not any insurance involved in this case. It appears that merely because a default judgment has been obtained that this is not evidence that no insurance is involved.

"Please furnish us with some proof that coverage U is applicable to this case and I will look further into the matter."

This last communication is hardly a repudiation of its contractual liability. The attorney for plaintiffs responded by filing the complaint in the present case.

The judgment of the District Court is reversed and the cause is remanded with instructions to dismiss the complaint.

CELEBREZZE, Circuit Judge (dissenting).

The sole issue in this case is whether the Appellant, by its conduct, impliedly waived its right to arbitrate a dispute arising under an uninsured motorist endorsement in its policy with the Appellees. The majority apparently holds that reasonable minds could not reasonably differ that the Appellant did not waive arbitration. I respectfully disagree.

The Michigan Supreme Court has held that where arbitration is involved, waiver need not be shown to have been expressly made, but may be implied from the conduct of an insurer. Bielski v. Wolverine Ins. Co., 379 Mich. 280, 150 N.W.2d 788 (1967). In Bielski, which was that court's most recent pronouncement on this issue, the Michigan Supreme Court quoted the following statements with approval:

"'A clause in an insurance policy providing for arbitration or appraisal of the loss or damage as a condition precedent to a suit by the policy holder to recover insurance is inserted wholly for the protection of the insurer and may be waived by it. Such waivers need not be expressed in terms, but may be implied by the acts, omis-

sions, or conduct of the insurer or its agents authorized in such respect.' 29A Am.Jur., Insurance, § 1617, p. 703."

"'The insurer, once having waived the right to demand arbitration of the loss under the terms of the policy, cannot require that the matter in dispute be submitted to arbitrators.' 29A Am.Jur., Insurance, § 1617, p. 704." 379 Mich. at 286, 150 N.W.2d at 790.

The policy enunciated in Bielski, and in other Michigan cases, is that where insurers recognize the existence of arbitrable disputes, they have the duty to go forward with, or expedite, arbitration. Where they fail to do so, they waive their right to arbitrate. This policy stems from several entrenched principles of insurance law. First, insurers, which profit off their investments, benefit from delays in the resolution of conflicts, at the expense of their insureds. See Shapiro v. Patrons' Mutual Fire Ins. Co., 219 Mich. 581, 189 N.W. 202, 203 (1922). Since delay benefits the insurer, it should not be encouraged to sit on the procedures it writes into its contract for its benefit until its insured exercises them for it. Second, this policy arises from the long-recognized duty of insurance companies to cooperate with their insureds. See, e. g., Gaunt v. John Hancock Mutual Life Ins. Co., 160 F.2d 599 (2d Cir. 1947), cert. denied, 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858. The third principle underlying this policy is the canon contra proferentem which is applied with particular force to insurance contracts generally. See, e. g., McNally v. American States Ins. Co., 308 F.2d 438, 444 (6th Cir. 1962) (applying Michigan law).

I believe that the Appellant's letters of February 9 and 22 at least raised a jury question as to waiver, which the jury properly decided in favor of the Appellees. Those letters indicate beyond a doubt that the Appellant knew there was a genuine, arbitrable dispute. Yet, neither letter mentioned arbitration. Nei-

ther intimated that the Appellant was considering arbitration; neither suggested the Appellees request arbitration pursuant to Clause 15. One indicated that the Appellant considered the matter "closed and requires no further action"; the other that the Appellant was "unable to consider any coverage U payment." The abrupt, final tone of these letters suggests they were calculated to delay or avoid payment. They certainly breached the Appellant's "duty to cooperate" towards a "reasonably speedy determination of liability." Shapiro v. Patrons' Mutual Fire Ins. Co., 219 Mich. 581, 189 N.W. 202, 203 (1922).

In view of my feeling that those two letters raised at least a jury question as to waiver, I would consider the March 2 letter irrelevant. Having impliedly waived by its actions the right to arbitrate the dispute, the Appellant could not revive it by subsequent acts. Bielski v. Wolverine Ins. Co., 379 Mich. 280, 150 N.W.2d 788 (1967).

I would affirm the judgment of the District Court.