HAWKINSON TREAD TIRE SERVICE COMPANY, a Corporation, Plaintiff-Respondent, v. INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY OF INDIANAPOLIS, INDIANA, a Corporation, Defendant-Appellant, No. 42348—245 S. W. (2d) 24.

Division One, December 10, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, January 14, 1952.

*Franklin E. Reagan* for appellant; *Sievers & Reagan* and *Adolph K. Schwartz* of counsel.

*B. W. La Tourette* and *G. M. Rebman* for respondent.

VAN OSDOL, C.—Appeal from a judgment for $14,611.74, the amount found by the trial court to have been the "actual loss sustained," indemnified by a fire insurance policy, plaintiff Hawkinson Tread Tire Service Company, a corporation, insured. The fire occurred about noon on February 28, 1946, destroying a building and equipment therein on North Twelfth Street in St. Louis. The building was occupied by plaintiff as a lessee. The building and equipment were occupied and used by plaintiff in its tire retreading business. Plaintiff's lease on the building expired on the day of the fire, and plaintiff subsequently availed itself of a building on Market Street in a resumption of its tire retreading business.

Upon this appeal we are not concerned with any indemnity for property loss. We are concerned with the provisions of the policy indemnifying plaintiff for damage or destruction by fire of the "use and occupancy" of the described property necessitating an interruption of business. See generally Annotation 75 A. L. R. 253; Vol. 5, Appleman, Insurance Law and Practice, § 3120; General Ins. Co. of America v. Pathfinder Petroleum Co. (9 Cir.) 145 F. 2d 368; National Union Fire Ins. Co. v. Anderson-Prichard Oil Corp. (10 Cir.) 141 F. 2d 443; Fidelity-Phenix Ins. Co. v. Benedict Coal Corp. (4 Cir.) 64 F. 2d 347; Hutchings v. Caledonian Ins. Co. of Scotland (D. C.) 52 F. 2d 744; Goetz v. Hartford Fire Ins. Co., 193 Wis. 638, 215 N. W. 440.

Defendant-insurer, Indiana Lumbermens Mutual Insurance Company of Indianapolis, upon this appeal, contends that plaintiff may not maintain the instant action "in violation" of an appraisal clause of the policy; that the insurance policy covered only the operations of plaintiff at the Twelfth Street address mentioned in the policy, and the policy is not to be construed to cover plaintiff's business operations at a different address; and that, in any event, the court erred in refusing to limit plaintiff's claim to the period of time required to resume plaintiff's normal tire retreading operations. There is the further contention that interest was erroneously allowed by the trial court in its findings and judgment.

The policy insured plaintiff against loss in case the described building, and machinery and equipment contained therein, situated at 1119-23 North Twelfth Street, were destroyed or damaged by fire so as to necessitate a total or partial suspension of business. It was provided the defendant-insurer was to be liable "for the *actual loss sustained,* for not exceeding such length of time as would be required with the exercise of due diligence and dispatch, to rebuild, repair or replace such part of the property - - - as has been destroyed or damaged, commencing with the date of the fire and not limited by the date of expiration of this policy, to wit:—Item I. $25,000— On (a) the net profit which is thereby prevented from being earned and (b) such charges and other expenses, including salaries of offi-

cers—executives—department managers—employees under contract and other important employees, as must necessarily continue during a total or partial suspension of business, to the extent only that such charges and expenses would have been earned had no fire occurred. - - - The amount of net profit and/or charges and expenses - - - shall be determined, whether for the purpose of ascertaining the amount of loss sustained or for the application of the Contribution Clause, by giving due consideration to the experience of the business before the fire and the probable experience thereafter.'' It was also provided, ''as soon as practicable after any loss, the Insured shall resume complete or partial operation of the property herein described and shall make use of other property, if obtainable, if by so doing the amount of loss hereunder will be reduced, and in the event of the loss being so reduced such reduction shall be taken into account in arriving at the amount of the loss hereunder.''

The whole structure of the Twelfth Street building was burned out, except a small section in the front on the east. On the floor was ''a tangle of steel, burned out roof, plus the materials that the Hawkinson retread had in there.'' There was substantial evidence tending to show that ''it would take anywhere from ten to eleven months up to clean out that building, redesign, procure the steel, and have it ready for occupancy.'' However, R. W. Filkey, Incorporated, of which R. W. Filkey was president and principal stockholder, was in the process of constructing a building on Market Street, and it had been the intention of plaintiff corporation, of which R. W. Filkey was also president and principal stockholder, to lease the new building and to remove its tire retreading business to the new building when it was ready for occupancy. A contract of lease was entered into by R. W. Filkey, Incorporated, lessor, and plaintiff, lessee, as of May 29, 1946. On February 28th, the Market Street property was a ''long ways from completion.'' The completion of the building had been delayed by the shortage of materials and adverse weather conditions. It would have taken sixty to ninety days to ''get into'' the Market Street property under normal conditions. Plaintiff had not availed itself of its option to renew its lease of the Twelfth Street property, and, had it not been for the delay in the completion of the Market Street building, plaintiff might have moved into that building prior to February 28th.

After the destruction of the building on Twelfth Street,. plaintiff obtained some new retreading equipment, installed same in the incomplete Market Street building, and recapped a few tires during the month of March 1946. More new retreading equipment was delivered to plaintiff during the months of April, May, June and July, 1946; and in August the plaintiff's retreading of tires in its operations at the Market Street address was but seventeen per cent less than in August 1945 at the Twelfth Street address. There

was a fifteen per cent downward trend in the tire retreading industry in 1946.

During all negotiations between the parties with the purpose of arriving at an agreement relating to the actual loss sustained, defendant-appellant contended and herein contends that, inasmuch as plaintiff contemplated the removal of its business to the Market Street location and was able (defendant-appellant asserts) to resume its normal operations by the end of a six-month period (by August 31, 1946) at the Market Street address, the "actual loss sustained" should be computed during the six-month period following the fire. Plaintiff-respondent contended, and herein contends, effect should be given to the business at the Twelfth Street address as forecast or projected during the ten-month period following the fire in computing the actual loss sustained, and the actual operations at the Market Street address should be taken into account (in so far as the operations at that address reduced the loss) during the minimum time (ten months) which would have been necessary to have rebuilt and restored the property destroyed, and to have resumed operations at the Twelfth Street location.

An accountant, witness for plaintiff, computed plaintiff's claim as per plaintiff's "Exhibit 5" to be in the amount for which the trial court rendered judgment for plaintiff, $14,611.74; but an accountant, witness for defendant, computed the actual loss sustained as per defendant's "Exhibits B and C" in the amount of $6,049.10. The difference of results of computations of the accountants was in large measure due to the legal contentions of the parties, plaintiff-insured and defendant-insurer, as to the construction of the provisions of the policy. Plaintiff's accountant in the preparation of Exhibit 5 had adopted plaintiff's theory that insurance was recoverable to December 31, 1946, that is, to the date upon which the Twelfth Street property could have been rebuilt and restored. Defendant's accountant, in the preparation of Exhibits B and C, had adopted defendant's theory that insurance was recoverable to August 31, 1946, the date defendant contends plaintiff attained "normal operations" at the Market Street location.

Another material difference of opinion between the insured and the insurer, which is reflected in the computations of their respective accountants, relates to the question whether one Beckerle was an "important employee." See the quoted provision "(b)" of the policy pertaining to charges and expenses, supra. It was and is the contention of plaintiff-insured that Beckerle, a shop foreman, was not an "important employee" and would not have been continued upon its payroll after the fire during an indefinite period, or for the ten months required to rebuild and restore the Twelfth Street property. It was and is the contention of defendant-insurer that Beckerle should have been considered an "important employee." These con-

tentions are of significance because, if Beckerle was an important employee, his salary was insurable and the loss would be increased; but the "use and occupancy" value of the Twelfth Street property would also be increased, and the ultimate "actual loss sustained" would be reduced by the "Contribution Clause" of the policy.

Having endeavored to generally state the facts giving rise to the instant litigation, we will examine the contention of defendant-appellant that the action was brought in violation of the appraisal provision contained in the policy.

The policy provided, "in case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. - - - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with - - -."

 It is generally held that where a policy provides that, upon disagreement as to the amount of the loss, the amount of the loss shall be appraised by competent and disinterested appraisers *"upon the written demand* (or request) *of either,"* the provision does not make the appraisal a condition precedent to a plaintiff's action on the policy. The written demand or request, however, has been held to be a condition precedent to an award upon appraisal. Probst v. American Cent. Ins. Co., 64 Mo. App. 408; Wallace v. German-American Ins. Co., 2 Fed. 658, id., 41 Fed. 742; 29 Am. Jur., Insurance, § 1244, pp. 929-930. In the instant case, even though it be conceded defendant had made a demand for an appraisal, it is our considered opinion that the *appraisal* clause quoted supra did not apply to the *controversy* giving rise to the instant action and did not preclude plaintiff's institution of the instant action; and that compliance with the clause was not a condition precedent to plaintiff's right of recovery. The disagreement was not as to the "amount of loss" as such; and, if a compliance with the appraisal clause were held to be a condition precedent to recovery in the instant case, the appraisal clause would operate as a provision for arbitration. There is the distinction recognized in this state between clauses providing for *arbitration*, whereby parties seek to substitute tribunals other than courts to determine their entire controversy, and clauses providing for the simple *appraisal* of values, as, for example, an assessment of the money "amount of loss" indemnified in a fire insurance policy. Zallee v. Laclede Mut. Fire & Marine Ins. Co.,

44 Mo. 530; Dworkin v. Caledonian Ins. Co., 285 Mo. 342, 226 S. W. 846; 7 Couch on Insurance, Sec. 1604, p. 5604, at page 5606; Section 435.010 R. S. 1949.

It is true there had been a ''firm'' disagreement which had resulted in a difference of views as to the amount of the ''actual loss sustained.'' As early as October 20, 1948, the parties were firm in their respective contentions and had disagreed upon the interpretation of the policy and resultant computation of the loss. But the resulting difference of views as to the amount of the loss was incidental to the actual underlying (legal) controversy between the parties as to the meaning of the insurance contract and its application to the facts. It is essential that the legal contentions of the parties be resolved in order to make correct computations in a determination of the actual loss sustained. Actually the controversy and disagreement relate to defendant's liability (or, more accurately, the extent of its liability). There is no disagreement as to an *amount* of a loss which could be appraised—appraised in the sense of making an assessment or estimate of property values.

■ The policy, written as it was on the Twelfth Street property, insured plaintiff's use and occupancy of that property at that address, and we should not give effect to the termination of the lease (on the same date the fire occurred) in affecting plaintiff's claim against defendant under the provisions of the policy expressly insuring against fire the use and occupancy of the property at the Twelfth Street address. There was no evidence that plaintiff could not have arranged to renew its lease and continue its occupancy of the Twelfth Street building. The policy contained no provision affecting defendant's liability upon a termination of the lease subsequent to a fire. See and compare Grand Pacific Hotel Co. v. Michigan Commercial Ins. Co., 243 Ill. 110, 90 N. E. 244; and contrast Scher v. Hartford Fire Ins. Co., 129 N. J. L. 421, 30 A. 2d 33, id., 130 N. J. L. 555, 33 A. 2d 892. Although plaintiff contemplated a removal to Market Street, the policy did not; and the fire (not the lease) destroyed the use and occupancy of the Twelfth Street property, the very risk on *the very subject matter defendant had expressly insured.* It is our view that plaintiff's loss sustained should be computed by giving effect to the policy provision ■ requiring ''due consideration to the experience of the business before the fire and the probable experience thereafter'' as if in operations *at the Twelfth Street* address, ''for such length of time (ten months) as would be required with the exercise of due diligence and dispatch'' to rebuild and replace the property, the use and occupancy of which defendant insured. We believe this was the intention of the parties as disclosed by the whole policy and giving effect to all of its provisions. We do not construe the language ''probable experience thereafter'' to mean that the ''actual'' experience at the

Market Street address may be taken into account in computing the "net profit" and "charges and expenses," and in applying the "Contribution Clause." However, under the "resumption of operations and use of other property" clause, quoted supra, the actual profit and loss experience thereafter at the Market Street address was necessarily and properly taken into account in any *reduction* of the loss sustained.

In order to ascertain the whole effect of the actual operations on Market Street in reducing the loss, the experience of such operations must be necessarily measured during the time which would have been required to rebuild and replace the property on Twelfth. There was no applicable provision of the policy limiting the extent of defendant's liability to a resumption of normal operations in some "obtainable" property other than that of the Twelfth Street address. We bear in mind the liability under the policy was expressly the actual loss sustained for the "length of time" which would be required to rebuild, repair or replace the property destroyed.

There was the circumstance that plaintiff did have the Market Street property presently "obtainable" for use, and plaintiff did avail itself of the Market Street property to resume its retreading business at that address. This was a circumstance advantageous to the insurer-defendant in this case, since (as we shall see infra) the operation at the Market Street address *reduced* the amount of the loss sustained. The insurance company, defendant, was entitled to and was by the trial court's judgment given the benefit of the resumption of plaintiff's retreading operations at the Market Street address, in so far as the loss was thereby "reduced."

Examining plaintiff's Exhibit 5 we observe that, had the plaintiff been unable to avail itself of other property to continue its retreading business, and giving effect to the provision of the policy requiring "due consideration to the experience of the business before the fire and the probable experience thereafter" (making allowance for a 15% downward trend in the tire retreading industry and applying the Contribution Clause), the "actual loss sustained" (in operations on Twelfth Street as projected for the ten-month period following the fire) would have been $18,842.59. In the computation as disclosed by Exhibit 5, a projected net loss of $470.06 for the ten-month period was deducted, that is, set off as against the projected "charges and expenses" for the same period of time. This was proper. There was no "net profit" in the projection of the operations at Twelfth Street for the ten-month period following the fire, and there was no insurance recoverable or claimed under the quoted provision (a), Item I of the policy, supra. There was, as stated, a projected net loss. Consequently, the "charges and expenses" to the extent of the net loss of $470.06 would not have been earned had no fire occurred. The policy provided the charges and expenses which

necessarily continued during the suspension of the business were to be allowable to the extent only that such charges and expenses would have been earned had no fire occurred. See the quoted provision (b), Item I of the policy, supra; Puget Sound Lumber Co. v. Mechanics' & Traders' Ins. Co., 168 Wash. 46, 10 P. 2d 568; and Goetz v. Hartford Fire Ins. Co., supra. We also observe, in our examination of plaintiff's Exhibit 5, that, taking into account an audit of the profit and loss in the actual operations of plaintiff on Market Street for the ten-month period following the fire, the "actual loss sustained" was *reduced* to the amount of $14,611.74 for which amount the trial court rendered judgment.

 Attending the question whether Beckerle was an "important employee"—

Beckerle was retained on the payroll after the fire. He was used first as a watchman over the ruined building and equipment on Twelfth Street, and was used later in supervising retreading at Market Street. Beckerle was an important or "key" employee only when plaintiff was actually engaged in retreading, and, if plaintiff could not have resumed its retreading business on Market Street or in some other obtainable building, it would be reasonable to suppose that Beckerle would not have been considered such an important employee "as must necessarily continue" on the payroll for a period of time, as much as ten months, during which there could have been no retreading operations at the Twelfth Street address. Plaintiff's president Filkey testified plaintiff would not have continued Beckerle on the payroll during a "shutdown" for an indefinite period of time, even during a shutdown of four or five months. Upon this evidence, we believe the trial court was justified in finding Beckerle was not an important employee to be "necessarily" kept on the payroll during the period of time (ten months) it would have taken to resume operations at the Twelfth Street address. At least we cannot say such finding was clearly erroneous.

 The rent paid by plaintiff as lessee of the Twelfth Street property was $129.16 per month, and rental in that monthly amount was included in Exhibit 5 in projecting a probable experience at Twelfth Street for the ten-month period subsequent to the fire. The rent paid by plaintiff as lessee of the Market Street property was $900 per month. There was testimony that the $900 rental was reasonable for the Market Street property, and there was no evidence to the contrary. In the audit (shown in Exhibit 5) of the profit and loss in the actual operations on Market Street, rent in the sum of $8100 was recognized as a "shop expense." This was the rent paid for nine months of the ten-month period following the fire. In our opinion, this was an item correctly entered in the profit and loss statement as an expense in the actual operations at the Market Street address.

■ The Exhibit 5 is informative and, in so far as we can see, correctly computes the "actual loss sustained" in accordance with the other evidence and the applicable provisions of the policy as we understand them. We do not hesitate to approve the trial court's view that the actual loss sustained was in the stated sum of $14,611.74. Relating to the allowance of interest—

■ Plaintiff's accountant had requested a form for proof of loss in July 1948, and the accountant recalled that he had requested such a form at some prior date. It "might have been" in January or February, 1948. However, many months were consumed in audits, investigations, and in negotiations between the parties in endeavoring to arrive at an agreement. It is apparent that plaintiff made no proof of loss or any formal claim or demand in any stated sum until the plaintiff's Exhibit 5, in the nature of a formal claim, was prepared by its accountant and a copy presented to defendant on or about April 23, 1948. Under the policy the amount of the loss was payable sixty days after proof of loss. Treating the presentation of the Exhibit 5 as a proof of loss, we are of the opinion the trial court's judgment allowing interest from and after December 31, 1946, should be so modified as to allow interest from and after June 23, 1948. Wood v. General Ins. Co. of America, 229 Mo. App. 296, 77 S. W. 2d 167; New York Life Ins. Co. v. Griesedieck (8 Cir.) 116 F. 2d 559; 46 C. J. S., Insurance, § 1393b, pp. 697-699; Section 408.020 R. S. 1949.

The judgment thus modified should be affirmed.

It is so ordered. *Lozier* and *Coil, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.