

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| PHILIP BREWER AND<br>LORI BREWER, | ) | WD84331 |
| | ) | |
| Respondents, | ) | OPINION FILED: |
| v. | ) | |
| | ) | March 8, 2022 |
| STATE FARM FIRE AND<br>CASUALTY COMPANY, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
**Honorable R. Michael Wagner, Judge**

**Before Division Two:**
**Alok Ahuja, P.J., Edward R. Ardini, Jr. and Janet Sutton, JJ.**

This case involves a dispute between an insurer, State Farm, and its insured, Philip and Lori Brewer. The Brewers filed a claim for property damage with State Farm but the parties were unable to reach a resolution on the claim. The Brewers subsequently filed a petition and motion to appoint an umpire. The circuit court sustained the motion over State Farm's objection and appointed an umpire in the matter. State Farm appeals. We find that the dispute is properly characterized as a coverage dispute rather than a dispute about the amount of loss. Therefore, the insurance policy's appraisal provision did not apply and the appointment of an umpire was improper. We vacate the trial court's judgment and enter the judgment the circuit court

should have entered and dismiss the amended petition for the appointment of an umpire without prejudice.

State Farm Fire and Casualty Company (State Farm) issued a rental dwelling insurance policy (policy) to homeowner Philip Brewer.[1] The policy covered a home in Belton, Missouri, and certain personal property. While the policy was in effect, the home was damaged by a tree during a storm. As a result, the homeowners made a claim for property damage with State Farm.

State Farm sent a contractor to the home to inspect the damage and prepare an estimated cost of repair. State Farm's contractor estimated the value of the loss to be $66,772.77. The homeowners then sent State Farm an estimate for repairs from a different contractor, Manning General Contractors, (Manning) in the amount of $153,140.16.

State Farm rejected Manning's estimate because State Farm believed it contained multiple items outside the scope of coverage. State Farm advised the homeowners that the Manning estimate could not be approved as it "include[d] many discrepancies, inconsistencies, and overcharges." State Farm provided the following specific reasons for its rejection: the estimate included code-upgrade charges that were not covered under the policy; it included "non-applicable charges" relating to "fall protection" and "tall ladder" installations for a single-story home; it included an estimate to remove and replace engineered wood flooring, a type of flooring not present in the home; it included the cost of repairing certain closets and rooms that did not

---

[1] The policy and subsequent communications between the parties list only Philip Brewer as the insured. In the circuit court, and as well as the briefs before us, the parties refer to both Philip and Lori Brewer as the insured party. This discrepancy has no bearing on our resolution of the case, and we refer to the insured as "homeowners."

2

sustain damage; it included the cost of repairing a closet with dimensions that were not "consistent with the dimensions of a closet"; it included the cost of replacing floor joists in certain areas of the home when an engineer found no such damage to those floor joists; it included the cost of removing and replacing all the roof rafters when an engineer had concluded that only some of the roof rafters needed replacement; and it included "duplicative" and "overlapping" charges relating to the roof repair. State Farm also pointed out that Manning's estimate differed greatly from Manning's own subcontractor's estimate with respect to interior repairs, with Manning's estimate more than double its own subcontractor's estimate.

The homeowners then submitted a request for appraisal to State Farm. State Farm denied the homeowner's request for appraisal, citing the appraisal provision of the homeowner's policy, which stated, in full:

> **Appraisal**. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

State Farm further indicated that "[t]he appraisal provision of your policy is to resolve differences in the price of the repairs which State Farm determined are covered.

3

Appraisal cannot be used to resolve differences about the scope of work to be performed or coverage provided by contract."

The homeowners subsequently filed a first amended petition for the appointment of an umpire in Cass County Circuit Court. The homeowners alleged that "[a] dispute arose as to the amount owed by State Farm as a result of the loss." The homeowners further alleged they appointed an appraiser "pursuant to the terms of the policy" but that State Farm had "failed and refused to appoint an appraiser . . . ." The homeowners requested that the circuit court appoint an umpire to resolve their disagreement.

State Farm filed a motion to dismiss and suggestions in support. State Farm argued that, under the policy, it had no obligation to repair or replace damaged items not covered, it would not pay an amount exceeding that necessary to repair or replace, and it would pay only the smallest amount necessary to cover the insured interest. State Farm characterized the dispute as a coverage disagreement, asserting that an appraisal was not appropriate to resolve coverage questions and the appointment of an umpire was "premature" until the parties resolved the coverage issues.

The circuit court held a hearing on State Farm's motion to dismiss and denied the motion.

Homeowners then filed a motion to appoint an umpire, which was identical to their first amended petition. The motion included an exhibit with proposed individuals to serve as umpires. The circuit court held a hearing on the homeowner's request for the appointment of an umpire. State Farm continued to oppose the request because the

4

dispute was a question of coverage and not the amount of loss, and that numerous issues about coverage needed to be resolved first.[2]

The circuit court entered a judgment sustaining the homeowners' motion to appoint an umpire and named an individual to serve in that capacity. State Farm appeals.

**Legal Analysis**

In its sole point on appeal, State Farm asserts that the circuit court erred in sustaining the homeowners' motion to appoint an umpire because the dispute could not be resolved through the insurance policy's appraisal provision as the dispute concerned the scope of coverage rather than the value of a covered loss.

The interpretation of a contract is a question of law subject to our *de novo* review. *Belton Chopper 58, LLC v. N. Cass Dev., LLC*, 496 S.W.3d 529, 532 (Mo. App. W.D. 2016). Here, in our *de novo* review, we are required to apply the principles of contract interpretation to the insurance policy in question. *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008). The question of whether an insurance policy is ambiguous is a question of law. *Id.* When a policy is unambiguous, we must enforce the policy as it is written. *Id.*

Here, both State Farm and the homeowners agree that the appraisal provision in the policy is unambiguous. The policy plainly and unambiguously gives both State Farm and the homeowners the right to demand an appraisal, but only when the parties "fail to agree on the amount of the loss." The parties agree there is legitimate damage

---

[2] State Farm also provided the circuit court a separate list of umpires for the court's consideration, in the event the court granted the homeowner's request. The circuit court ultimately selected an individual from State Farm's proposed list.

5

from the tree, but diverge on the proper way to determine the extent of State Farm's liability. While the appraisal provision in the policy is unambiguous, its application depends on the nature of the factual dispute between State Farm and the homeowners.

The homeowners argue that the appraisal provision is applicable because the dispute is over "the amount of the covered loss." However, State Farm contends that significant questions relating to what repairs are actually covered under the policy remain. For example, and this is not an exhaustive list of State Farm's objections, State Farm disputes the amount of damage caused to certain interior portions of the home, the extent of necessary roof repair, and the scope of necessary structural repair. Therefore, the question here is whether the circuit court properly appointed an umpire in light of these factual disputes; namely, whether the dispute is a coverage dispute or amount of loss dispute.

"[T]he interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." *D.R. Sherry Const., Ltd. v. Am. Fam. Mut. Ins. Co.,* 316 S.W.3d 899, 902 (Mo. banc 2010). To that end, "appraisal provisions in an insurance policy apply only if the dispute between the parties relates to the amount of the loss and not coverage." *Am. Fam. Mut. Ins. Co. v. Dixon*, 450 S.W.3d 831, 836 (Mo. App. E.D. 2014) (citing *Hawkinson Tread Tire Serv. Co. v. Ind. Lumbermens Mut. Ins. Co. Indianapolis, Ind.,* 245 S.W.2d 24, 28 (Mo. 1951)).

In *Hawkinson*, the parties disagreed on both the meaning of the insurance contract and its application to the facts. *Hawkinson*, 245 S.W.2d at 26-28. The Missouri Supreme Court stressed that value arguments must yield when they are "incidental to the actual underlying (legal) controversy between the parties as to the

6

meaning of the insurance contract and its application to the facts." *Id.* at 28. Put simply, "coverage disputes trump disagreements over valuation." *Cincinnati Ins. Co., v. St. Louis Produce Mkts., Inc.,* No.4:20-cv-00358-SNLJ, 2020 WL 5848075, at *3 (E.D. Mo. Oct.1, 2020).

A coverage dispute is a "controversy and disagreement [that] relate to defendant's liability (or, more accurately, ***the extent of its liability.***)" *Hawkinson,* 245 S.W.2d at 28 (emphasis added). Defenses and exclusions are coverage issues, and those cannot be determined through the appraisal process. *Olga Despotis Trust v. Cincinnati Ins. Co.,* 867 F.3d 1054, 1060 (8th Cir. 2017) (citing *Dixon,* 450 S.W.3d at 836).

In *Dixon*, the Eastern District considered the application of an insurance policy's appraisal provision. *Dixon,* 450 S.W.3d at 832. In particular, the insurer and insured disagreed as to whether any hailstorm-related damage had in fact occurred to the insured's concrete driveway or porch, and whether the hail damage to a wooden deck could be remedied merely by repainting it, rather than by more extensive repair or replacement. *Id*. at 832-33. The insurance company requested that the circuit court appoint an umpire to settle the dispute, and the homeowners opposed such request because the dispute was one of coverage, not valuation, and appraisal could not be used to resolve the dispute. *Id.* at 833. The circuit court granted summary judgment in favor of the insurance company. *Id.*

On appeal, the Court reversed the circuit court's action and held that "appraisal provisions in an insurance policy only apply if the dispute between the parties relates to the amount of loss and not coverage." *Id.* at 836 (citing *Hawkinson*, 245 S.W.2d at

7

[28]).[3] The Court noted that the insurance company had improperly used its appraisers to determine whether or not a covered loss existed. *Dixon,* 450 S.W.3d at 836. The Court stated that appraisal provisions could not be used as a means of arbitration to resolve coverage issues because that process is prohibited by section 435.350. *Id.*[4] The Court held that the parties' dispute concerning the extent of the damage to the insured property, and the extent of the repairs necessary to address covered damage, was a coverage issue rather than merely a dispute over the amount of the loss, even though the parties agreed "that hail damage, in the abstract, is a covered loss under the Policy." *Id.* at 835; *see also Cincinnati Ins. Co., v. St. Louis Produce Mkts., Inc.,* No.4:20-cv-00358-SNLJ, 2020 WL 5848075, at *2 (E.D. Mo. Oct.1, 2020)(mem) (holding that a coverage issue, rather than a dispute over the amount of loss, was implicated "when . . . the insurer concludes that the majority of damage to a roof was caused by weather-related events occurring outside the policy period").

To put it simply, appraisers and umpires cannot resolve insurance coverage disputes by "masquerading as unapproved and statutorily disallowed arbitrators." *Cincinnati Ins. Co.,* 2020 WL 5848075, at *3.

Here we are presented with a dispute as to the extent of coverage under the policy and under the facts. State Farm objected to various portions of the Manning estimate as duplicative, because it included charges for undamaged portions of the property, and further objected to the scope of work necessary and what was covered

---

[3] Several federal cases applying Missouri law have reiterated the same rule. *See, e.g., Olga Despotis Trust v. Cincinnati Ins. Co.,* 867 F.3d 1054, 1060 (8th Cir. 2017); *Church Mut. Ins. Co. v. Circle of Light,* 416 F.Supp.3d 847, 851 (E.D. Mo. 2019); *Cincinnati Ins. Co., v. St. Louis Produce Mkts., Inc.,* No.4:20-cv-00358-SNLJ, 2020 WL 5848075, at *3 (E.D. Mo. Oct.1, 2020)(mem).

[4] Section 435.350 RSMo. (2016) excludes "contracts of insurance" from arbitration.

8

under the policy. These objections relate to the extent of State Farm's liability and they constitute coverage disputes. *See Olga Despotis Trust*, 867 F.3d at 1060.

At the hearing on the motion to appoint an umpire the attorney for the homeowners even acknowledged

> We haven't asked for a determination as to the coverage amounts. . . the issue of what damage was going to be covered was brought up at a later time. I also have some evidence on that that I want to share based on the inspection from the city of Belton . . .
> [W]e are just saying there is substantially more damage than [State Farm] is willing to admit to and that is why we need an umpire to come in and say this appraiser is correct or this appraiser is correct. We are going to get an independent third party to tell us exactly what has been damaged and then at that point if we need to argue about whether there is coverage or not . . .

In response, State Farm asserted that if an umpire ordered it to pay for a non-covered loss, it would refuse to pay and the parties would be back in front of the circuit court. State Farm pointed out that this is why "case law says you need to resolve the coverage issues [first] . . . ." The homeowners' attorney responded that

> obviously they can bring up defenses at any point in time whether we do it now or later, the issue is they are not even participating in the process as far as coming up with numbers. I mean, if we can put our heads together to say here is the total amount of damage that has been done, they can fight with us all they want whether or not they want to pay it, but at this point we can't even agree on what the numbers are, so that is the point here.

As evidenced by the hearing, the homeowners are attempting to use the appraisal provision and an umpire to "tell them exactly what has been damaged" and, after that occurs, the parties would turn to the coverage issues. This is a misuse and improper application of the appraisal process under Missouri law. Appraisers and umpires do not have the legal authority to determine whether a covered loss exists. *Dixon*, 450 S.W.3d at 835 n.4. By seeking to invoke the appraisal provision, the homeowners are

9

inherently asking the appraiser to resolve coverage issues, but that is "an impermissible assignment of the dispute (by the [c]ourt no less) to what is effectively arbitration through so-called 'appraisers' and 'umpires.'" *Cincinnati Ins. Co.,* 2020 WL 5848075, at *3.

The homeowners also point out that they never "retained" Manning to complete the repairs on their home. This fact is of no consequence to the issue here. The homeowners submitted the Manning estimate to State Farm for consideration and in response to State Farm's own estimate. Their first amended petition for the appointment of an umpire alleges a dispute between the parties as to the "amount owed by State Farm as a result of the loss." Based on the record before us, however, the Manning estimate is the only figure advanced by the homeowners to support their claim of a dispute with State Farm. The homeowners urged the circuit court to simply "follow the terms of the contract," and that they have done all the things necessary to trigger and apply the appraisal provision. Until the parties determine and resolve the coverage issues, however, the appraisal provision is not applicable and the appointment of an umpire is not appropriate.

We are persuaded by State Farm's contention that the homeowners' request for an umpire under the policy's appraisal provision is, in fact, premature. The question here is one of coverage, namely what portion and extent of the damage is considered "covered" under the policy. The dispute relates to State Farm's liability, or, more accurately, the extent of its liability. This issue must be resolved first and cannot be resolved using the appraisal provision of the policy. As the homeowners' request to invoke the appraisal provision was premature and not ripe, the circuit court erred in

10

appointing an umpire and should have dismissed the amended petition without prejudice.[5] This point is granted.

## Conclusion

We vacate the trial court's judgment and pursuant to Rule 84.14,[6] we enter the judgment the trial court should have entered and dismiss the amended petition for the appointment of an umpire without prejudice.

_____
Janet Sutton, Judge

Ahuja, P.J. and Ardini, J. concur.

---

[5] _See Mo. State Conf. of the NAACP v. State,_ 633 S.W.3d 843, 848-49 (Mo. App. W.D. 2021) (reiterating rule that a dismissal on basis of lack of standing, ripeness, or mootness should be without prejudice.).

[6] Missouri Supreme Court Rule 84.14 provides: "The appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, in whole or in part, or give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case."